INTERNATIONAL SOCIETY FOR KRISHNA CONSCIOUSNESS OF MISSOURI, INC., et al., Plaintiffs–Appellants,

v.

CITY OF ST. LOUIS, Missouri, et al., Defendants–Respondents.

No. 65537.

Missouri Court of Appeals, Eastern District, Division Four.

Dec. 13, 1994.

Motion for Transfer to Supreme Court Denied Jan. 25, 1995.

Francis H. Kennedy, St. Louis, David M. Liberman, Los Angeles, CA, for appellants.

James J. Wilson, Donald G. Dylewski, Associate City Counselors, St. Louis, for respondents.

KAROHL, Judge.

The International Society for Krishna Consciousness of Missouri, Inc. (ISKCON) appeals the order and judgment of the circuit court, which found the St. Louis airport rule entitled "Rules Regulating Time, Place and Manner of Expressive Activities, Literature Distribution and Solicitation in Unsecured Areas of Lambert–St. Louis International Airport" was valid in part and invalid in part. Here, ISKCON argues the circuit court erred in declaring the rule valid in part. We affirm.

The procedural history of this case begins in 1975, when members of ISKCON were arrested and charged with violating St. Louis County Ordinance Chapter 804, which regulated peddlers and solicitors. In December 1975 ISKCON filed suit against St. Louis County and various named officials, in which ISKCON alleged that Chapter 804 of the County Ordinances was unconstitutional because it had been applied to prevent members of ISKCON from engaging in religious practices at Lambert–St. Louis International Airport. In 1976 the parties signed a settlement agreement in the case, which was incorporated into a consent decree by the court, under which the members of ISKCON were permitted to distribute religious literature and solicit donations in the airport.

In 1977, the City of St. Louis Airport Authority, which is charged with the operation of the airport, promulgated Rule 1.05, entitled "Solicitation Rule," which ISKCON believed violated the terms of the settlement agreement. After members of ISKCON were charged with violation of Rule 1.05, ISKCON filed a petition in the circuit court for a declaratory judgment and injunctive relief against the City of St. Louis. In the petition, ISKCON asked the court to declare St. Louis County Ordinances Chapter 804 and § 716.150—as amended by Ordinance 8216, which prohibits trespassing—and Rule 1.05 unconstitutional. The ordinance was declared constitutional. However, Rule 1.05 was declared constitutional in part and unconstitutional in part. Sections 3a. and 3b.1.–3. of Rule 1.05, which read as follows, were declared unconstitutional:

a. No person shall solicit alms or contributions of money or of other articles of value, for religious, charitable or any other purpose, or conduct or participate in any speech-making, distributing of pamphlets, books or other written or graphic materials upon the airport or within its facilities without having delivered a written notice to the Director, or [sic] his, her or its intent to do so at least seven (7) days prior thereto....

b. Persons having given such written notice shall be permitted to conduct their activities in or upon the public Airport areas subject to the following restrictions:

1. Solicitors shall be limited to no more than four (4) persons at any one time;

2. Solicitation shall be limited to the hours between 9:00 a.m. and 5:00 p.m.;

3. Solicitations shall be conducted only from "Solicitation Booths" which shall be furnished by the Airport Authority; such booths shall be located within the permissible areas at such points as may be designated from time to time by the Director....

Likewise, Sections 4 and 6 of the rule were declared unconstitutional. These sections were as follows:

*SECTION 4* In the event that two or more organizations seek to conduct the solicitations described herein at the same time, the Director shall apportion the available areas between them an [sic] as equitable a basis as possible.

In no event, however, shall more than two persons be engaged in any activities and solicitations in any one area at the same time. When the Director receives more

applications for permits than he is able to grant by following this rule, then he may impose such reasonable and equitable restrictions as to allowable dates or hours or numbers of participants as may reasonably be required to provide fair and as equal as possible opportunities for all applicants, while insuring the efficient and effective operation of the transportation function of the Airport.

\* \* \* \* \* \*

*SECTION 6* The Director is empowered to wholly or partially restrict the activities provided for herein in the event of emergencies, including but not limited to, strikes affecting the operation of the Airport, aircraft or traffic accidents, riots or civil commotion, power failures, or other conditions tending to disrupt the normal operations of the Airport.

After the court's ruling, Rule 1.05 was revised. The members of ISKCON have complied with the revised regulation.

On January 6, 1993, the City of St. Louis promulgated a newly revised rule entitled "Rules Regulating Time, Place and Manner of Expressive Activities, Literature Distribution and Solicitation in Unsecured Areas of Lambert–St. Louis International Airport." The new rule was based on the decision of the U.S. Supreme Court in *International Society for Krishna Consciousness, Inc. v. Lee,* —— U.S. ——, 112 S.Ct. 2701, 120 L.Ed.2d 541 (1992). Under this rule, persons or groups wishing to distribute literature or engage in "expressive activity" at the airport must obtain a written permit, for which they must apply a minimum of seven days before the date of the proposed activity. The permit shall limit the activities to three designated areas, which are inside the terminal building at the entrance to each of the three concourses; allow activities only between the hours of 8:00 a.m. and 7:00 p.m.; and be valid for a period not to exceed thirty days. If the number of applicants desiring to use one of the designated areas exceeds three at any time, the Assistant Airport Director shall schedule each applicant's use of the area so as to apportion the available time equally. In addition, the rule prohibits the solicitation of donations and the sale of litera-

ture within the terminal. On January 13, 1993, the City of St. Louis filed a motion to dissolve or modify the judgment, decree, and order entered April 2, 1979, to permit them to enforce the newly revised rule.

In support of its motion to dissolve or modify the 1979 decree, the City of St. Louis presented evidence that the number of passengers using the airport had tripled since 1979. The evidence also indicated that approximately 40% of the passengers in recent years have been making connections with other flights within the airport. These passengers did not enter or leave the airport in the usual mode. Since the consent decree was entered, the airport had changed, for the most part, from an origination destination airport to a hub airport. Floyd Hargrove, Deputy Director of the Airport, testified an airport must serve the needs of the airlines by allowing them to arrive and depart in a timely manner. In addition, he explained for every passenger, there are 1.6 "meeters and greeters." The court stated, "Even if the Court accepts that the number of 'meeters and greeters' is approximately one to one as it was at the time of the original order, the airport terminal is now being used by over 40,000,000 people each year."

Based on the evidence, the court issued an order in which it stated the newly adopted rule was valid in part and invalid in part under the U.S. Constitution and *Lee.* Specifically, it held the rule was valid in restricting the time, place, and manner of distribution of literature in the main terminal but the rule was invalid in totally banning the solicitation of donations and the sale of literature within the terminal. The court reasoned *Lee* upheld a total ban on solicitation within terminals because it applied a "reasonable" restriction test as a replacement for the previously approved "compelling state interest" test. At the airport involved in *Lee,* only 3% of passengers were transferring planes and the members of ISKCON had access to the rest of the passengers on the sidewalk areas outside the terminals. Thus, at Lambert–St. Louis International Airport, a total ban on solicitation within the terminals would deprive the members of ISKCON of access to those who were transferring planes, a full

40% of passengers. Thus, although a total ban on solicitation is invalid, the court decided subjecting solicitation to the same time, place, and manner regulations as the airport had imposed on the distribution of literature would be a reasonable accommodation of the needs and rights of both parties. The court ordered the 1979 order be modified in accordance with its opinion and solicitation be subject to the same rules and regulations as apply to the distribution of literature. ISKCON appeals this order in part.

Before we address the merits of the appeal, we note Rule 84.04(d) requires the points on which an appellant relies shall "state briefly and concisely what actions or rulings of the court are sought to be reviewed and wherein and why they are claimed to be erroneous, with citations of authorities thereunder.... Setting out only abstract statements of the law without showing how they are related to any action or ruling of the court is not a compliance with this Rule." ISKCON's brief contains no points relied on, but instead a four-paragraph exposition akin to an argument. Because the brief violates 84.04(d), this appeal is subject to dismissal. However, the City of St. Louis has not requested dismissal, and we *ex gratia* review.

■ The essence of ISKCON's convoluted brief is the airport rule confining oral communication and the distribution of religious literature to one or more booths is not a valid time, place, and manner regulation of speech. The court's order on the restriction on solicitation has not been appealed. ISKCON claims the circuit court failed to apply the proper test for determining the validity of the airport's booth restriction. ISKCON contends the "time, place, and manner" analysis enunciated in *Perry Educational Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45, 103 S.Ct. 948, 955, 74 L.Ed.2d 794 (1983), should have been applied. However, the circuit court used a "reasonableness" approach approved in *Lee* to the restriction.

*Lee* is directly dispositive of this issue. In *Lee*, the U.S. Supreme Court concluded airports are nonpublic fora and the proper analysis for a regulation in a nonpublic forum need only satisfy a requirement of reasonableness. The requirement for proof of a compelling state interest to justify a regulation was no longer required. Thus, the circuit court properly considered the dispute by applying an analysis of reasonableness to the restriction on distribution and oral communication at Lambert–St. Louis International Airport.

■ The reasonableness of a restriction of access to a nonpublic forum must be assessed in the light of the purpose of the forum and all the surrounding circumstances. *Cornelius v. NAACP Legal Defense and Education Fund, Inc.*, 473 U.S. 788, 809, 105 S.Ct. 3439, 3452–53, 87 L.Ed.2d 567 (1985). Furthermore, the restriction need only be reasonable and not the most or only reasonable limitation. *Id.* at 808, 105 S.Ct. at 3452. Here, the restrictions consist of obtaining a written permit; confining solicitation, distribution of literature, and oral communication to booths, which are located at the entrance to each of the airport concourses; and confining activities to the hours of 8:00 a.m. to 7:00 p.m.

In support of the regulations, Floyd Hargrove, Deputy Director of the Airport, testified as follows:

> [Y]ou're dealing with almost twenty-one million passengers in 1992, and there have been some statistics that indicated for every passenger we have there is one point six meeters and greeters. We are, in effect, talking about some fifty plus million people that operate through this airport on a yearly basis.
>
> And, so, we try very hard, through our construction and management decisions, to not, to not allow any kind of impeding of that traffic and to make it as efficient as we possibly can, to speed up that flow of traffic, through moving walkways, through escalators, through not allowing concessionaires to set up any kind of a concession stand that would impede traffic and constant efforts to just make the flow of traffic quick and smooth and efficient.

The City of St. Louis also presented evidence that 40% of passengers at Lambert–St. Louis International Airport make connections with other flights at the airport, thereby further

necessitating the assurance of movement throughout the airport so that such passengers could meet their connecting flights without delay.

The location of the booths and the hours during which they may be used are also relevant to the analysis. The booths are at the entrances to each of the three concourses. Hargrove testified they are not out of the way or hidden and in fact they are "where the traffic would flow right by them." In addition, the evidence showed the bulk of airline operations occurred between 7:00 a.m. and 7:00 p.m., which coincides with the hours members of ISKCON can occupy the booths.

In *Heffron v. International Society for Krishna Consciousness, Inc.*, 452 U.S. 640, 101 S.Ct. 2559, 69 L.Ed.2d 298 (1981), the U.S. Supreme Court decided the constitutionality of a similar booth restriction at a state fairground, a public forum. The proferred reason for such a restriction was the "need to maintain the orderly movement of the crowd given the large number of exhibitors and persons attending the Fair." *Id.* at 649–50, 101 S.Ct. at 2565. Because a public, rather than nonpublic, forum was involved in the case, the court in *Heffron* applied a heightened level of analysis, which required the restriction serve a significant governmental interest. The court held the state's interest in maintaining the flow of movement at the fair was substantial and upheld the booth restriction. *Id.* at 654, 101 S.Ct. at 2567.

This case differs from *Heffron* in that a nonpublic forum is involved. However, the principles enunciated are applicable, although it is unnecessary to apply the higher standard. Here, the restrictions are constitutional if reasonable. They need not meet the requirement that the state interest be substantial.

Thus, in light of the purpose of the airport and the totality of the proven circumstances, we hold the restrictions in this case to be reasonable. The City of St. Louis has a valid interest in ensuring the movement of the crowd throughout the airport. However, it has also provided that the booths in which the members of ISKCON can distribute literature, orally communicate, and solicit contributions are located in areas and can be occupied during such hours as to allow almost-total access to the public consisting of airport users. Thus, restricting literature dissemination and oral communication to the booths as provided is a reasonable means of balancing the requirements of operation of the airport with the constitutional rights of members of ISKCON and other like groups.

In its reply brief, ISKCON raises an additional point. It contends the modification of the consent decree was improper, because "a change in decisional law, without more, is an insufficient basis upon which to modify a consent decree." This point was not properly raised in ISKCON's original brief. The City of St. Louis addressed this issue in its brief, presumptively because it could not decipher ISKCON's vague points on appeal. Because this point was not properly raised by ISKCON, we do not decide it here.

Affirmed.

AHRENS, P.J., and SIMON, J., concur.